### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **KALEN MOCK**<br><br>        **Plaintiff,**<br>v.<br><br>**ELLSWORTH CORRECTIONAL FACILITY**<br>Serve:<br>Warden Don Langford<br>1607 State Street<br>Ellsworth, KS  67439<br><br>**KANSAS DEPARTMENT OF CORRECTIONS**<br>Serve:<br>Secretary Jeff Zmuda<br>714 SW Jackson, Suite 300<br>Topeka, KS  66603<br><br>        **Defendants.** | **Case No. _____** |

### COMPLAINT

COMES NOW Plaintiff Kalen Mock, by and through undersigned counsel, and for his Complaint against the above captioned Defendants, hereby states and alleges as follows:

### NATURE OF THE CLAIMS

1. This matter is an action for legal and equitable relief to redress the deprivation of Plaintiff's constitutional rights by the named Defendants, pursuant to 42 U.S.C. §1983, in addition to violations of Kansas state law.

2. Plaintiff has continued to endure a high risk of an objectively serious injury, and lasting damages, due to Defendants' failure to treat Plaintiff's condition while causing unnecessary and unreasonable infliction of pain.

1

3. Defendants are deliberately indifferent to the serious and systematic constitutional violations as well as to the severe injuries and damages Plaintiff continues to suffer as a result.

4. Defendants' liability is based upon allegations including the following assertions, all of which demonstrate patterns of behavior and deliberate indifference to the issues raised and to the rights of citizens. These all led to deprivations of rights, privileges, and immunities secured by the federal and state constitutions as well as federal and state laws. Defendants acted together in a joint venture, were joint tortfeasors, and are jointly and severely liable to Plaintiff.

## PARTIES

5. Plaintiff, Kalen Mock, is an individual resident of the State of Kansas, and at all times relevant to this action, was in the custody of the Kansas Department of Corrections and residing in the Ellsworth Correctional Facility.

6. Defendant Kansas Department of Corrections ("KDOC") is a state governmental entity, organized and existing under the laws of the State of Kansas and the United States. Defendant KDOC is liable as a governmental entity.

7. At all times pertinent hereto, all employees and agents of Defendant KDOC were acting in their individual capacity, and as agents of Defendant KDOC within the course and scope of their employment and authority in furtherance of the interests of Defendant KDOC. All the acts and omissions of the employees of Defendant KDOC are imputed to their employer who is liable for such acts, omissions, policies, procedures, practices, and customs.

8. Defendant Ellsworth Correctional Facility ("ECF") is a law enforcement agency of the Kansas Department of Corrections, and is responsible for the day-to-day operations and custody of the Ellsworth Correctional Facility.

9.     At all times pertinent hereto, all employees and agents of Defendant ECF were acting in their individual capacity, and as agents of Defendant ECF within the course and scope of their employment and authority in furtherance of the interests of Defendant ECF. All the acts and omissions of the employees of Defendant ECF are imputed to their employer who is liable for such acts, omissions, policies, procedures, practices, and customs.

10.    Defendants acted under color of state and federal law at all times relevant to this Complaint.

## JURISDICTION AND VENUE

11.    The Court has jurisdiction over this lawsuit pursuant to 28 U.S.C. §§ 1331 and 1343, as this lawsuit arises under the Constitution of the United States and the provisions of 42 U.S.C. § 1983. Additionally, the Court has supplemental jurisdiction of Plaintiff's state law claim under 28 U.S.C. § 1367(a).

12.    Venue is proper in this Court under 28 U.S.C. § 1367(a), in that a substantial part of the events or omissions giving rise to the claims occurred inside of a Kansas correctional facility in Ellsworth County, Kansas.

13.    Defendants' conduct violated clearly established federal and state protected rights of which every reasonable competent official in Defendants' respective positions would have, or should have, been aware.

## FACTUAL ALLEGATIONS RELEVANT TO ALL COUNTS

14.    On March 11, 2022, Plaintiff, an inmate at ECF, was walking on the grounds to his assigned job within the facility.

15.    At the same time and place, the sidewalk and parking lots had not been properly cleared of snow and ice from a previous storm.

16. On the way to his assignment, Plaintiff slipped on a large patch of untreated ice on the grass and fell, severely injuring himself.

17. Plaintiff was transported to the Ellsworth County Medical Center where he received emergency treatment for his right foot and ankle.

18. Plaintiff was diagnosed with a displaced oblique fracture of his fibula and along with other injuries to his foot.

19. Plaintiff was transported to the Salina Surgical Center where he underwent emergency surgery which involved the insertion of syndesmosis screws to assist in properly healing the broken bone.

20. Plaintiff's postoperative diagnosis included a right ankle midshaft fibula fracture, syndesmosis disruption, and deltoid ligament disruption.

21. Plaintiff was ultimately transported back to Defendant ECF's clinic, with strict instructions from the surgeon to place only the minimal weight necessary for maintaining balance on his right leg for six weeks. Plaintiff was also provided a walker to assist in keeping his body weight off of his right leg.

22. The surgeon also noted and informed Plaintiff that the syndesmosis screws would need to be removed in approximately nine to ten weeks.

23. Upon his return to Defendant ECF, Defendant ECF's medical and general staff members told Plaintiff that he was supposed to put weight on his injured ankle approximately two weeks after the surgery, despite the surgeon instructing Plaintiff to utilize a walker and to place only the minimal weight necessary for maintaining balance on his right leg for six weeks.

24. Plaintiff visited the surgeon approximately six weeks following the surgery, for his post-surgical follow up appointment. The surgeon informed Plaintiff that the healing was improving, and he would proceed to remove the syndesmosis screws in approximately two weeks.

25. The surgeon also informed Plaintiff that he would need post-operative rehabilitation to aid his full recovery.

26. Following his appointment, Plaintiff made numerous complaints to Defendant ECF's medical staff regarding the pain he was experiencing over the next several weeks; he additionally made several requests to have a follow up visit with the surgeon, to have his screws removed, as the surgeon ordered.

27. Plaintiff's requests were never granted and Defendant ECF refused to allow Plaintiff to attend the appointment to have the screws removed. The attending physician stated to Plaintiff, "We're going to leave the screws in there. We have other people with those types of injuries" despite the surgeon's instructions and directions.

28. Plaintiff was told by Defendant ECF's staff that he would not be returning to see the surgeon, for removal of the syndesmosis screws or any type of physical therapy, and that he would simply have to "deal with the pain".

29. Upon information and belief, Plaintiff's ankle has not healed properly, and he is at risk of being forced to undergo additional future surgeries due to the improper healing.

30. Since Plaintiff's surgery, he was not allowed to be re-evaluated by the performing surgeon, nor has Plaintiff's syndesmosis screws been removed.

31. Following the surgery, Plaintiff's ankle and foot has been evaluated by Defendant ECF's general medical staff, however Plaintiff has not been seen by an actual orthopedic surgeon as related to the removal of the syndesmosis screws or the proper healing of his fracture.

32. Plaintiff has complained to Defendants' general staff and medical staff on a near weekly basis, but his complaints did not result in the removal of the syndesmosis screws or even a follow up evaluation by the surgeon. Eventually, Plaintiff stopped reporting his complaints to the general staff and medical staff.

33. Plaintiff has been forced to learn to cope with his discomfort and is simply provided daily medication for his pain.

34. Plaintiff now medicates daily, as he suffers from chronic pain and likely permanent damage to his right foot/ankle.

35. As a direct and proximate result of Defendants' conduct, Plaintiff sustained significant and long-term damages.

## COUNT I – DUE PROCESS VIOLATIONS PURSUANT TO 42 U.S.C. § 1983
### (v. *All Defendants*)

36. Plaintiff re-alleges and incorporates by reference herein all of the allegations contained in the aforementioned paragraphs.

37. Due to the Plaintiff's severe fibula fracture, and significant syndesmosis and ligament disruption, Plaintiff was forced to undergo open reduction and internal fixation surgery, in which medical screws were utilized for stabilization and healing.

38. Following the procedure, Plaintiff was informed by the surgeon, and it was documented that in approximately 9 to 10 weeks from the date of surgery, the syndesmosis screws needed to be removed.

39. The surgeon again reiterated to Plaintiff at his post-operative appointment that the screws needed to be removed to help complete the healing process, in addition to subsequent physical therapy.

40. Despite the surgeon's instructions, since the day of surgery, Plaintiff was never allowed to have the syndesmosis screws removed. The screws currently remain affixed and Plaintiff did not undergo any type of physical therapy or rehabilitation as recommended by the referring surgeon.

41. Defendants have deprived Plaintiff of his rights under the Eighth Amendment to the United States Constitution, to be free from cruel and unusual punishment.

42. Plaintiff faced a substantial risk of serious and chronic harm if the screws were not removed, as instructed by the surgeon.

43. Despite the surgeon's order, Plaintiff's screws have remained in place and continue to negatively impact Plaintiff's health and well-being.

44. Defendants knew that a serious medical need existed and were deliberately indifferent to Plaintiff's risk of serious harm, and deliberately interfered with Plaintiff's proper treatment, by purposefully opting to disregard the referring surgeon's specific instructions.

45. Rather than taking reasonable measures to address Plaintiff's risk and simply follow the surgeon's orders, Defendants instead chose to examine literature relating to the removal of hardware screws and independently decided that Plaintiff's syndesmosis screws would not be removed.

46. Defendants' deliberate indifference to, and deliberate interference with, Plaintiff's proper treatment, caused Plaintiff to suffer further substantial harm, which includes chronic pain, tenderness, and lack of range of motion in his ankle.

47. Plaintiff suffers from regular pain and is forced to medicate daily to help alleviate some of his agony and discomfort.

48. Defendants, through their acts and omissions, failed to provide Plaintiff the proper medical care of medical care by flagrantly ignoring the instructions of the independent surgeon, who mandated further post-surgical treatment and specifically the removal of Plaintiff's syndesmosis screws and rehabilitation.

49. As a direct and proximate result of Defendants' acts and omissions, Plaintiff sustained significant losses and damages, as follows:

   A. significant ankle injury;

   B. significant foot injury;

   C. significant pain and suffering;

   D. significant emotional distress;

   E. significant mental anguish; and

   F. significant inconvenience.

50. In addition to Plaintiff's requests to have the syndesmosis screws removed or at the very least, attend a follow up appointment with the surgeon to see whether his ankle has fully healed with screws remaining in place, Defendants' choice of post-surgical treatment was in stark contrast to the orders of the actual surgeon.

51. The difference of opinion regarding the reasonable treatment plan between Defendants' medical staff and the referring surgeon who performed the surgery, leading to Plaintiff's long-lasting damage and chronic pain, gives rise to Plaintiff's claim pursuant to 42 U.S.C. § 1983.

52. Despite the surgeon's orders, Defendants' medical staff chose to develop an alternative treatment plan for Plaintiff's recovery.

53. Upon information and belief, Defendants' medical staff did not maintain an expert or specialized physician in the field of orthopedics, who evaluated the surgeon's recommendation and had a mere difference of opinion.

54. The action of Defendants' medical staff reviewing literature regarding the removal of syndesmosis screws, depicts the lack of specialized expertise Defendants maintained, as Defendants disregarded the recommendation of the qualified expert surgeon.

55. Defendants' alternative treatment plan was based on the lack of "clear indication" that Plaintiff's syndesmosis screws needed to be removed. The explicit recommendation of removal by the expert surgeon was deemed not sufficient.

56. Defendants have exhibited deliberate indifference to the health and safety of Plaintiff, in violation of the rights and privileges secured and protected by federal law.

57. Defendants' practices, policies and procedures as related to the care of Plaintiff's significant medical need and risk of further harm, are inadequate to provide safe conditions and adequate medical care for Plaintiff.

WHEREFORE, Plaintiff prays for judgement against Defendants in a fair and reasonable sum for actual damages and noneconomic, in excess of $25,000.00, costs incurred and expended herein, together with prejudgment and post-judgment interest and for such other and further relief as this Honorable Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury.

Respectfully submitted,

**PK LAW GROUP**

/s/ *Phillip Strozier*
PHILLIP C. STROZIER, KS #29179
JAMES T. REXFORD, KS #20468
2015 Grand Blvd.
Kansas City, MO 64108
(816) 929-8777 Phone
(816) 929-8791 Fax
pstrozier@pklawgroup.com
jtrexford@pklawgroup.com
**ATTORNEYS FOR PLAINTIFF**