## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

**KALEN MOCK,**

      **Plaintiff,**

      **v.**                        **CASE NO. 23-3257-JWL**

**ELLSWORTH CORRECTIONAL**
**FACILITY, et. al,**

      **Defendants.**

### MEMORANDUM AND ORDER

Plaintiff brings this civil rights complaint under 42 U.S.C. § 1983.  Plaintiff is incarcerated at the Ellsworth Correctional Facility in  Ellsworth, Kansas ("ECF").  On December 11, 2023, the Court entered a Memorandum and Order to Show Cause (Doc. 4) ("MOSC") directing Plaintiff to show good cause why his Complaint should not be dismissed and granting him an opportunity to file an amended complaint to cure the deficiencies.   This matter is before the Court for screening Plaintiff's Amended Complaint at Doc. 6.  The Court's screening standards and the underlying factual allegations are  set forth in the  Court's MOSC.   In summary, Plaintiff alleges that Defendants are deliberately indifferent to his serious medical conditions in violation of the Eighth Amendment and Kansas law.

In his original Complaint, Plaintiff named as defendants the Kansas Department of Corrections ("KDOC") and ECF.  The Court found in the MOSC that the State of Kansas and its agencies are absolutely immune from suits for money damages under the Eleventh Amendment and therefore his claims against the KDOC were subject to dismissal.  The Court also found that Plaintiff's claims against ECF are subject to dismissal.  Prison and jail facilities are not proper defendants because none is a "person" subject to suit for money damages under § 1983.  The Court

found in the MOSC that Plaintiff failed to name any individual that allegedly denied him proper medical care at ECF, and that in an amended complaint, Plaintiff should name the individuals responsible for the violation of his constitutional rights.

Plaintiff responded to the MOSC, noting that he would be filing an amended complaint in which he would no longer name the KDOC as a defendant and he would be adding Dr. Paige Dodson as a defendant.  (Doc. 5, at 2.)  Plaintiff then filed his Amended Complaint on January 11, 2024.  (Doc. 6.)

Plaintiff alleges that he slipped on ice at ECF and suffered from a severe fibula fracture, and significant syndesmosis and ligament disruption. Plaintiff was transported to the Ellsworth County Medical Center where he received emergency treatment for his right foot and ankle. Plaintiff was transported to the Salina Surgical Center where he underwent emergency surgery which involved the insertion of syndesmosis screws to assist in properly healing the broken bone. Plaintiff returned to ECF with strict instructions from the surgeon to place only minimal weight on his right foot for six weeks, and to remove the syndesmosis screws in nine to ten weeks.

After returning to ECF, staff told Plaintiff to put weight on his injured ankle two weeks after the surgery.  Plaintiff visited the surgeon six weeks after the surgery, and the surgeon informed Plaintiff that the healing was improving, and that he would proceed to remove the screws in approximately two weeks.  The surgeon also informed Plaintiff that he would need post-operative rehabilitation to aid in his full recovery.

Despite numerous complaints to staff regarding the pain he was experiencing over the next several weeks, and requests to have a follow-up visit with the surgeon to have his screws removed, Plaintiff's requests were never granted.  Defendant Dr. Dodson stated that they were going to leave the screws in place, despite the surgeon's instructions.  Dr. Dodson and other staff informed

Plaintiff that he would not be returning to see the surgeon for removal of the screws or be receiving any type of physical therapy, and he would have to deal with the pain.

Plaintiff alleges that his ankle has not healed properly and he is at risk of being forced to undergo additional future surgeries due to the improper healing.  Plaintiff now medicates daily for chronic pain, suffers from a lack of range of motion in his ankle, and likely has permanent damage to his right foot/ankle.   Plaintiff seeks monetary damages.

The Eighth Amendment guarantees a prisoner the right to be free from cruel and unusual punishment. "[D]eliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain' . . . proscribed by the Eighth Amendment." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (citation omitted).

The "deliberate indifference" standard includes both an objective and a subjective component.  *Martinez v. Garden*, 430 F.3d 1302, 1304 (10th Cir. 2005) (citation omitted).  In the objective analysis, the deprivation must be "sufficiently serious," and the inmate must show the presence of a "serious medical need," that is "a serious illness or injury." *Estelle*, 429 U.S. at 104, 105; *Farmer v. Brennan*, 511 U.S. 825, 834 (1994), *Martinez*, 430 F.3d at 1304 (citation omitted). A serious medical need includes "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Martinez*, 430 F.3d at 1304 (quoting *Sealock v. Colorado*, 218 F.3d 1205, 1209 (10th Cir. 2000)).

"The subjective component is met if a prison official knows of and disregards an excessive risk to inmate health or safety."  *Id.* (quoting *Sealock*, 218 F.3d at 1209).  In measuring a prison official's state of mind, "the official must both be aware of facts from which the inference could

be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 1305 (quoting *Riddle v. Mondragon*, 83 F.3d 1197, 1204 (10th Cir. 1996)).

An apparent disagreement over course of treatment, however, does not rise to the level of a constitutional violation. *Gee v. Pacheco*, 627 F.3d 1178, 1192 (10th Cir. 2010). "A plaintiff 'need not show that a prison official acted or failed to act believing that harm actually would befall an inmate,' but rather that the official 'merely refused to verify underlying facts that he strongly suspected to be true, or declined to confirm inferences of risk that he strongly suspected to exist.'" *Lucas v. Turn Key Health Clinics, LLC*, 58 F.4th 1127, 1137 (10th Cir. 2023) (quoting *Farmer*, 511 U.S. at 842, 843 n.8).

The Tenth Circuit recently clarified that "it is possible to have some medical care and still state a claim under the gatekeeper theory." *Id*. at 1139. "The inquiry under a gatekeeper theory is not whether the prison official provided *some* care but rather whether they fulfilled their sole obligation to refer or otherwise afford access to medical personnel capable of evaluating a patient's treatment needs when such an obligation arises." *Id*. (citations omitted). Under the deliberate indifference analysis, "merely doing *something* (with no reference to the underlying condition) does not necessarily insulate one from liability." *Id*. "Instead, a court may need to determine whether there was the functional equivalent of a complete denial of care in light of the specific circumstances." *Id*. (citations omitted).

The Court finds that Plaintiff's Eighth Amendment claim against Defendant Dodson in her individual capacity passes screening. Any claim for monetary damages against Defendant Dodson in her official capacity is dismissed. "[T]he Eleventh Amendment bars [a plaintiff] from seeking [money damages] from defendants in their official capacities." *Davis v. Bruce*, 129 F. App'x 406, 409 (10th Cir. 2005) (unpublished) (citing *Hafer v. Melo*, 502 U.S. 21, 30–31 (1991)); *see also*

*Will v. Michigan Dep't. of State Police*, 491 U.S. 58, 71 (1989) (finding that "a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office . . . [a]s such, it is no different from a suit against the State itself") (citations omitted).

Plaintiff's Amended Complaint continues to name ECF as a defendant and claims in Count II that ECF failed to properly train or supervise ECF staff.[1]  As the Court noted in the MOSC, "[t]o state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a *person* acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988) (emphasis added).  Prison and jail facilities are not proper defendants because none is a "person" subject to suit for money damages under § 1983.  *See Will*, 491 U.S. at 71 (state agency is not a "person" which can be sued under Section 1983); *Davis*, 129 F. App'x at 408 (finding that district court's dismissal of claims against HCF was correct, "as a state or a state agency is not a 'person' subject to suit under § 1983") (citing *Will*, 491 U.S. at 71).

In *Krebs v. El Dorado Corr. Facility*, the Tenth Circuit concluded that plaintiff's "claims against the correctional facilities must fail because State agencies (including correctional facilities) are not persons under section 1983." *Krebs v. El Dorado Corr. Facility*, 673 F. App'x 891, 892 (10th Cir. 2016) (unpublished) (citing *Will*, 491 U.S. at 64).  The Tenth Circuit further noted that even if it construed plaintiff's amended complaint as asserting official-capacity claims against the wardens of the facilities, plaintiff would still fail to state a claim because "state officials acting in their official capacities are not persons under section 1983." *Id*. at 892–93 (citing *Will*, 491 U.S. at 71).  Although a state official is literally a person, "a suit against a state official in his or her

---

[1] Plaintiff does not name a supervisory official at ECF and does not seek injunctive relief.  *See* Doc. 6, at 13 (Plaintiff's request for relief seeks damages, interest, attorneys' fees, and costs).

official capacity is not a suit against the official but rather is a suit against the official's office . . . As such, it is no different from a suit against the State itself." *Id*. at 894 (quoting *Will*, 491 U.S. at 71).

Plaintiff has cured the deficiency noted in the MOSC by naming the individual medical provider that allegedly denied him proper medical care at ECF.  Therefore, the Court finds that Plaintiff's Amended Complaint survives screening with regard to Plaintiff's individual capacity claims against Defendant Dodson.  The Court will direct Plaintiff to serve Defendant Dr. Paige Dodson.

**IT IS THEREFORE ORDERED BY THE COURT** that Plaintiff's claims against ECF and any official capacity claims against Defendant Dodson are **dismissed.**

**IT IS FURTHER ORDERED** that Plaintiff's Amended Complaint survives screening and the Court directs Plaintiff to serve Defendant Dr. Paige Dodson.

**IT IS SO ORDERED**.

**Dated January 19, 2024, in Kansas City, Kansas.**

S/  John W. Lungstrum
**JOHN W. LUNGSTRUM**
**UNITED STATES DISTRICT JUDGE**